IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 23, 2002 Session

## STATE OF TENNESSEE v. BRENDA LEE HICKS

**Appeal from the Criminal Court for Hamilton County**
**Nos. 231179, 231952     Douglas A. Meyer, Judge**

---

**No. E2001-00990-CCA-R3-CD**
**June 18, 2002**

---

The defendant, Brenda Lee Hicks, was convicted of vehicular homicide and entered a plea of guilt to one count of driving without a license. The trial court imposed a sentence of six years for the vehicular homicide and ordered service of 11 months and 29 days in jail. The balance of the sentence is to be served on supervised probation. The trial court imposed a concurrent sentence of 30 days incarceration for the charge of driving without a license. In this appeal as of right, the defendant contends that the evidence is insufficient to support the vehicular homicide conviction and questions the propriety of the sentence for that offense. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Hank Hill, Chattanooga, Tennessee, for the appellant, Brenda Lee Hicks.

Paul G. Summers, Attorney General & Reporter; Kathy D. Aslinger, Assistant Attorney General; and Rodney C. Strong, for the appellee, the State of Tennessee.

### OPINION

On August 20, 1999, the defendant lost control of her vehicle while driving on Berkley Street in Red Bank. Her red Chevrolet first veered into the opposite lane and then toward the yard of a residence. Claudia Reynolds, who was sitting on her front porch watching the victim, her three-year-old son Christopher Masiulis, play in the yard, saw the vehicle "cut across the corner of [her] neighbor's yard, str[ike] a mailbox, str[ike] a tree, and head[] toward a ditch . . . in front of [her] neighbor's property." As Ms. Reynolds ran toward her son, the car, which she described as traveling at a high rate of speed, "jumped the ditch, crossed the street, barreled over an asphalt curb, came across a strip of lawn, charged through a five-foot-tall chain link fence with posts sunk in cement and . . . accelerated." The car entered the Reynolds yard and narrowly missed a tree and a bird bath before striking the three-year-old victim. The vehicle came within one foot of Ms. Reynolds. The

defendant traveled through two more yards and struck a parked car before finally coming to a stop. The victim had been propelled through a chain link fence into the neighboring property.

Officer Jay Lamance of the Red Bank Police Department, who was the first officer to arrive at the scene, testified that the car traveled 74 feet and 4 inches off of the roadway before leaping a ditch on Regal Drive, which intersects Berkley Drive, and then continued across the roadway, over a curb, and underneath a chain link fence before entering the Reynolds yard. Officer Lamance determined that after the car struck the victim, it crossed a sidewalk and two driveways before colliding with a parked car. The total distance of travel after leaving the roadway was over 352 feet.

John Kwasnoski, who was qualified as an accident reconstruction expert, testified that in his opinion the tire tracks left by the defendant's vehicle indicated that the defendant had not been braking at the time she struck the victim. While unable to determine the speed at which the defendant had been traveling, Kwasnoski determined that if the speed of the vehicle was 30 miles per hour at the time it left the roadway, the defendant could have stopped in less than 100 feet by simply applying the brakes. Kwasnoski conceded that traveling into the roadway after crossing the ditch on Regal Drive would have caused a "strong jolt" and that such a jolt could have caused the defendant's foot to slip from the brake to the accelerator.

Craig Glaze, a neighbor, testified that when he heard what he believed to be an automobile crash, he found that his car had been struck in the rear by another vehicle. He then saw the defendant, who was talking on a cell phone, walk from the driver's side of the vehicle toward his house. The victim, who was lying in the yard next door, had no pulse.

Glaze's wife, Kathy Glaze, testified that the defendant came into her house after the wreck. The defendant told Ms. Glaze, "It jumped out of gear, it jumped out of gear."

Jerry Myers, a mechanic at Newton Chevrolet, inspected the defendant's vehicle shortly after the accident and determined that the vehicle was in good mechanical condition. He stated that the brakes on the vehicle operated properly.

When Detective Bobby Prichard questioned the defendant, she initially claimed that her husband had been driving the vehicle, which began "acting up." She stated that her husband stopped the car at the crest of a hill on Berkley Drive and walked back to their residence to get some oil for the car. The defendant informed Detective Prichard that the engine was left on and that the car "jumped" and then rolled down the hill. The defendant claimed that she tried to move into the driver's seat to stop the car and when she was unable to gain control, it veered off of the roadway. Later, the defendant admitted that because she had no driver's license, she had made a false statement. She acknowledged that she had been driving alone when she lost control of the vehicle. The defendant claimed that she had been driving within the speed limit when her car "just took off." She contended that she tried to stop the car but was unable to do so and stated that she did not see the victim.

Richard Hicks, the defendant's husband, testified that his wife telephoned and informed him that she had been in an accident and that she believed she had hit a child. Hicks, who lived nearby, went to the scene of the accident. Upon his arrival, the defendant asked him to tell police that he had been driving. Hicks stated that he initially lied to police in order to protect the defendant, who had no driver's license. Hicks testified that he had given the defendant approximately fifteen driving lessons and acknowledged that she sometimes drove by herself.

Helen Killebrew, the defendant's neighbor, testified that her children had often visited in the defendant's residence and described the defendant as always cautious with children. She stated that she had seen the defendant drive before and believed her to be a careful driver.

Debra Taylor, the principal at Red Bank Elementary School, where the defendant was employed as a janitor, testified that the defendant was caring and cautious with the children at school. Ms. Taylor, who was unaware that the defendant had no operator's license, stated that she believed the defendant to be a careful driver and had allowed her son to travel with the defendant on one occasion.

**I**

The defendant first asserts that the evidence is insufficient to support her conviction for vehicular homicide. On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Vehicular homicide is defined as "the reckless killing of another by the operation of an automobile, . . . [a]s the proximate result of conduct creating a substantial risk of death or serious bodily injury to a person." Tenn. Code Ann. § 39-13-213(a)(1). Reckless is defined as follows:

> "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that

an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Tenn. Code Ann. § 39-11-302(c).

Here, there was evidence that the defendant, who had never acquired a driver's license and had limited driving experience, was driving at a high rate of speed on the wrong side of the road when her vehicle inexplicably left the roadway and traveled through the yards of several residences for over 350 feet. Her vehicle struck a tree and a mailbox, jumped a ditch and a curb, crossed a street, and plowed through a chain-link fence before striking the victim. The defendant never applied the brakes and according to the single eyewitness, actually accelerated her vehicle before striking the victim. A mechanic testified that the vehicle was in proper working order. There was nothing wrong with the brakes. From all of this, it is our conclusion that the jury acted within its prerogative in determining that the defendant, by the manner in which she operated her vehicle, acted recklessly, consciously disregarding a substantial risk, in causing the death of the victim.

## II

The defendant next challenges both the length and manner of service of her sentence. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-

210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

If the trial court's findings of fact are adequately supported by the record, this court may not modify the sentence even if it would have preferred a different result. State v. Fletcher, 805 S.W.2d 785 (Tenn. Crim. App. 1991). The presumption of correctness is, however, "conditioned upon the affirmative showing in the record that the trial court considered sentencing principles and relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The trial court must place on the record the reasons for the sentence. State v. Jones, 883 S.W.2d 597 (Tenn. 1994).

The defendant asserts that the six-year sentence imposed for her conviction of vehicular homicide was excessive. She argues that the trial court misapplied three enhancement factors and failed to consider several non-statutory mitigating factors. In arriving at a sentence of six years, the maximum permitted for a Range I offender convicted of a Class C felony, the trial court found the following enhancement factors applicable:

> (1) The defendant has a previous history of criminal behavior in addition to that necessary to establish the appropriate range;
> (4) the victim was particularly vulnerable because of age;
> (10) the defendant had no hesitation about committing a crime when the risk to human life was high; and
> (16) the crime was committed under circumstances under which the potential for bodily injury to a victim was great.

See Tenn. Code Ann. § 40-35-114(1), (4), (10), and (16). The defendant concedes that factor (1), that the defendant has a previous history of criminal behavior, is applicable, but challenges the application of factors (4), (10), and (16).

In our view, enhancement factor (4), that the victim was particularly vulnerable because of age, is applicable. Because of his youth, the victim was unable to appreciate the danger posed by the speeding car, was unable to resist the harm, and was defenseless to the consequences.

The trial court determined that enhancement factor (10), that the defendant had no hesitation about committing a crime in which the risk to human life was high, was applicable because the risk to the life of Claudia Reynolds, the victim's mother, was great. This court has held that enhancement factor (10) may be applied in vehicular homicide cases when the defendant creates a risk to the life of a person other than the victim. State v. Bingham, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995); see also State v. Robbie R. Bailey, No. E2001-00210-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Nov. 29, 2001). The record supports the trial court's finding that the defendant created a risk to the life of someone other than the victim. Ms. Reynolds was within one foot of the defendant's car when she was "buffered back," in her words, by the car's acceleration.

The state conceded at oral argument that enhancement factor (16) should not have been applied given our supreme court's holding in State v. Imfeld, 70 S.W.3d 698 (Tenn. 2002). In Imfeld, our high court held that enhancement factor (16) applies only when the defendant creates a great risk of injury to a victim and does not apply when there is a risk of injury to others who are simply present at the scene of the crime. Id. at 706. Our supreme court ruled that enhancement factor (10) is the appropriate factor to be applied when there is a risk to the life of someone other than the victim, as is the case here. Id. at 707. It is our view that the trial court erred by utilizing factor (16) to enhance the defendant's sentence.

The defendant also asserts that the trial court failed to consider the mitigating factors presented at the sentencing hearing. The record, in our view, demonstrates that the trial court considered all of the favorable factors presented by the defendant and, in fact, gave them considerable weight. Because, however, the enhancement factors substantially outweighed the mitigating factors, the six-year sentence was warranted.

The defendant contends that the trial court erred by ordering a sentence of split confinement rather than granting her full probation. While "an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options," see Tenn. Code Ann. § 40-35-102(6), the burden of proving suitability for full probation rests with the defendant, see Tenn. Code Ann. § 40-35-303(b). As pointed out by the state, "[p]robation is a privilege or act of grace which may be granted to a defendant who is eligible and worthy of this largesse of law." State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990).

Among the factors applicable to probation consideration are the circumstances of the offense, the defendant's criminal record, social history and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978). The nature and circumstances of the offenses may often be so egregious as to preclude the grant of probation. See State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981). A lack of candor may also militate against a grant of probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983).

In Ashby, our supreme court encouraged the grant of considerable discretionary authority to our trial courts in matters such as these. 823 S.W.2d at 171; see State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986). "[E]ach case must be bottomed upon its own facts." State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). "It is not the policy or purpose of this court to place trial judges in a judicial straight-jacket in this or any other area, and we are always reluctant to interfere with their traditional discretionary powers." Ashby, 823 S.W.2d at 171.

Here, the trial court denied full probation, citing the defendant's initial lack of candor as the primary reason for the denial. The record does, in fact, establish that the defendant, immediately after her car came to rest, telephoned her husband, asking his cooperation in obstructing the investigation. While the defendant informed her husband that she suspected having struck the victim, she withheld that information from the authorities, claiming no knowledge of that fact.

Because lack of candor may be a basis for the denial of probation, the trial court did not err by denying full probation.

The defendant also asserts that the trial court erred by denying her application for judicial diversion. The judicial diversion statute provides that after an adjudication of guilt, a trial court may defer entry of judgment until a defendant successfully completes a diversion program or violates a condition of his release. See Tenn. Code Ann. § 40-35-313. If a defendant is successful, the statute provides for expungement from "all official records . . . all recordation relating to the person's arrest, indictment or information, trial, finding of guilty, and dismissal and discharge pursuant to this section." Tenn. Code Ann. § 40-35-313(b). The effect of dismissal under the diversion statute "is to restore the person, in the contemplation of the law, to the status the person occupied before such arrest or indictment or information." Id.

A defendant who meets the prerequisites of section 40-35-313(a)(1) is not entitled to judicial diversion as a matter of right. State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993). The decision to grant or deny judicial diversion rests within the sound discretion of the trial court and will be overturned only after a finding of an abuse of that discretion. Id. "This Court, . . . will not interfere with the refusal of the trial court to grant judicial diversion if there is 'any substantial evidence to support the refusal' contained in the record." Id. (quoting State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992)).

The criteria that the trial court must consider in deciding whether to grant or deny judicial diversion include: (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the status of the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. See State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983). In addition, the trial court should determine whether judicial diversion will serve the ends of justice. Id. The trial court must consider all of the enumerated criteria and must clearly articulate on the record the specific reasons for its determination. See State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989); State v. Markham, 755 S.W.2d 850, 853 (Tenn. Crim. App. 1988). If the trial court fails to place the reason for the denial of diversion on the record, this court must review the evidence to "'determine whether the trial court reached the correct result notwithstanding its failure to explain its reasoning.'" See State v. Larry Eldon Shannon, No. M2000-00985-CCA-R3-CD (Tenn. Crim. App., at Nashville, July 27, 2001) (quoting State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

The trial court did not specifically address the defendant's application for judicial diversion. The denial is implicit, however, because the trial court denied full probation and ordered a term in jail. The state correctly points out that "[t]he same guidelines are applicable in diversion cases as are applicable in probation cases, but they are more stringently applied to those seeking diversion." State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (citing State v. Holland, 661 S.W.2d 91, 93 (Tenn. Crim. App. 1983)). Because there was a sound basis for the denial of full probation, it is our view that the trial court did not abuse its discretion in denying the defendant's

application for judicial diversion.  See Bingham, 910 S.W.2d at 456 (defendant who was not suitable candidate for full probation was similarly not entitled to judicial diversion).

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE